UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| BRETT BOYER, Plaintiff, v. FIVE GUYS ENTERPRISES, LLC, Defendant. | Case No.: 15-cv-1417-L-JLB **ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND GRANTING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT** |
|---|---|

Pending in this putative class action filed pursuant to the Americans with Disabilities Act are parties' cross-motions for summary judgment. The motions are opposed. The moving parties filed their respective reply briefs. The motions are decided on the briefs without oral argument pursuant to Civil Local Rule 7.1(d)(1). For the reasons which follow, Defendant's motion is denied. Plaintiff's motion is granted to the extent Plaintiff seeks a finding of liability, and is denied in all other respects.

**I. BACKGROUND**

This action arises from Plaintiff's visit to one of Defendant's restaurants. Defendant is a chain of Five Guys fast food restaurants. To dispense beverages, Five Guys no longer uses traditional soda fountains, but new Coca-Cola Freestyle self-service machines. Freestyle machines allow customers to create their own soft drink mixtures by selecting from more than twenty flavors, mix them, and create a customized soda

1

beverage from more than 100 possible drink combinations. Because the Freestyle machine has only a visual touch-screen interface, blind customers are unable to use it without assistance.

Plaintiff, who is blind, visited a Five Guys restaurant in San Marcos, California on at least two occasions. On both occasions, Plaintiff paid for a soda fountain drink, and was given a cup to obtain the drink from the Freestyle machine. Although Plaintiff was using a white cane, he was not offered, and did not receive, any assistance form Five Guys' employees, but had to depend on his sighted companion to obtain his beverage.

Plaintiff filed a complaint alleging violations of (1) the Americans with Disabilities Act, 42 U.S.C. §12101 *et seq.* ("ADA"); (2) the Unruh Civil Rights Act, Cal. Civ. Code § 51 *et seq.* ("Unruh" or "Unruh Act"); and (3) the Disabled Persons Act, Cal. Civ. Code § 54 *et seq.* ("DPA"). He seeks statutory damages under California law, and injunctive relief under the ADA to prevent further violations. The Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1367.

Defendant filed a motion for summary judgment, arguing that the Court lacks subject matter jurisdiction because Plaintiff has no standing, and, alternatively, that it is entitled to summary judgment on the merits. Plaintiff opposed Defendant's motion and filed a motion of his own. Although Plaintiff's motion is styled as a motion for summary judgment, Plaintiff briefs liability and does brief the issues of injunctive relief or damages. Accordingly, Plaintiff's motion is deemed as a motion for partial summary judgment.

## II. DISCUSSION

Federal Rule of Civil Procedure 56 empowers the court to enter summary judgment on factually unsupported claims or defenses, and thereby "secure the just, speedy and inexpensive determination of every action." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 327 (1986). Summary judgment or adjudication of issues is appropriate if depositions, answers to interrogatories, and admissions on file, together with the

affidavits, if any, show there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a), (c)(1).

The burden on the party moving for summary judgment depends on whether it bears the burden of proof at trial.

> When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case.

*See C.A.R. Transp. Brokerage Co., Inc. v. Darden Restaurants, Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted). If the nonmoving party would bear the burden at trial, the moving party can meet the burden on summary judgment by pointing out the absence of evidence with respect to any one element of the opposing party's claim or defense. *See Celotex*, 477 U.S. at 325.

> When the moving party has carried its burden . . ., its opponent must do more than simply show that there is some metaphysical doubt as to the material facts[, but] must come forward with specific facts showing that there is a genuine dispute for trial. Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial.

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (internal quotation marks, citations and footnote omitted). The nonmoving party can make its showing by "citing to particular parts of materials in the record . . .; or [¶] showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. Proc. 56(c)(1).

> [W]here the nonmoving party will bear the burden of proof at trial, [it must] go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial" on all matters as to which it has the burden of proof.

*Celotex*, 477 U.S. at 324 (internal quotation marks omitted).

> Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . . The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

The filing of cross-motions for summary judgment "does not necessarily mean there are no disputed issues of material fact and does not necessarily permit the judge to render judgment in favor of one side or the other." *Starsky v. Williams*, 512 F.2d 109, 112 (9th Cir. 1975). Furthermore, "each motion must be considered on its own merits," and the court must consider evidence submitted in support of and in opposition to both motions before ruling on each one. *Fair Hous. Council of Riverside County, Inc. v. Riverside Two*, 249 F.3d 1132, 1136 (9th Cir. 2001).

### A. Standing

Defendant argues this action should be dismissed for lack of a case or controversy under Article III of the Constitution because Plaintiff lacks standing. A federal court "may not decide a cause of action before resolving whether the court has Article III jurisdiction." *RK Ventures, Inc. v. City of Seattle*, 307 F.3d 1045, 1056 n.6 (9th Cir. 2002). Standing is a requirement of federal jurisdiction under Article III. *See RK Ventures*, 307 F.3d at 1056 n.6. Accordingly, the Court first turns to Plaintiff's standing.

"[T]he party asserting federal jurisdiction . . . has the burden of establishing it." *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 n.3 (2006). "Each element of standing must be supported with the manner and degree of evidence required at the successive stages of the litigation." *Maya v. Centex Corp.,* 658 F.3d 1060, 1068 (9th Cir. 2011) (quoting *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560 (1992)) (internal quotation marks, ellipsis and citation omitted). Accordingly, Plaintiff as the party who commenced this action in federal court, has the burden of establishing standing with the type of evidence required at summary judgment.

Article III standing "requires federal courts to satisfy themselves that the plaintiff has alleged such a personal stake in the outcome of the controversy as to warrant his invocation of federal-court jurisdiction." *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009) (internal quotation marks and citation omitted, emphasis in original). A plaintiff must show he or she has suffered an injury in fact, the injury is fairly traceable to the challenged action of the defendant, and it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision. *Maya*, 658 F.3d at 1067; *see also Friends of the Earth, Inc. v. Laidlaw Envt'l. Servs., Inc.*, 528 U.S. 167, 180-81 (2000).

Defendant contends that Plaintiff lacks standing because he has not suffered an injury in fact. To meet this requirement, a plaintiff must allege an injury "that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical . . .." *Friends of the Earth*, 528 U.S. at 180. Because the existence of federal standing "often turns on the nature and source of the claim asserted," the Court's standing analysis must focus on the nature and source of Plaintiff's claim: discrimination as defined by the ADA. *Chapman v. Pier 1 Imports (U.S.), Inc.*, 631 F.3d 939, 947 (9th Cir. 2011) (quoting *Warth v. Seldin*, 422 U.S. 490, 500 (1975)). At the same time, however, "the threshold question of whether plaintiff has standing (and the court has jurisdiction) is distinct from the merits of his claim. Rather, the jurisdictional question of standing precedes, and does not require, analysis of the merits." *Maya*, 658 F.3d at 1068.

Defendant argues that Plaintiff cannot meet the injury requirement, because he admitted he "was not harmed" and did not "need, want, or request the human assistance with Freestyle dispenser." (Doc. no. 75-1 (Def.'s Mem. of P.&A.) at 14-15 (citing Plaintiff's deposition).)[1] Defendant's argument is rejected. First, Defendant misconstrues Plaintiff's deposition testimony. It is undisputed that Plaintiff uses a white cane. (Doc. no. 90 ("Undisputed Facts") at 8.) His blindness was therefore apparent. He cannot use

---

[1] Unless otherwise noted, the page numbers are assigned by the Court's ECF system.

the visual interface of the Freestyle machine like the non-visually impaired customers. (*See id.* at 3; doc. no. 75-7 ("Pl.'s Depo.") at 81.[2]) On his first visit, Plaintiff did not know, and could not see, that the soda fountain had been replaced by the Freestyle machine. Neither on his first nor on his second visit was Plaintiff offered any assistance from Defendant's employees when they handed him the soda cup. He therefore obtained a soda with his sighted companion's assistance. (Pl.'s Depo. at 60, 64; *see also* Undisputed Facts at 8.) Defendant's inference that Plaintiff admitted he was not harmed is unreasonable.

Second, Plaintiff's testimony that he was able to obtain a drink notwithstanding lack of assistance from Defendant's employees does not negate standing. In the context of an ADA violation, a plaintiff must show that the "encountered barrier . . . interfere[d] with [his] full and equal enjoyment of the facility, making his use of the facility more difficult than a nondisabled individual's." *Chapman*, 631 F.3d at 947 n.4. Plaintiff testified that he could not use the Freestyle machine because it uses a visual interface. (Pl.'s Depo. at 52-53, 58-60 & 80-81.) The fact that Plaintiff's companion had to assist him does not negate the presence of a barrier and failure to receive "full and equal enjoyment" of the facility.

Alternatively, Defendant argues that Plaintiff cannot establish standing for purposes of injunctive relief in light of his relocation to Colorado without concrete plans to return. (Def.'s Mem. of P.&A. at 15.) Although encounters with the noncompliant barriers related to one's disability are sufficient to demonstrate an injury-in-fact for standing purposes, a plaintiff seeking injunctive relief must additionally demonstrate 'a sufficient likelihood that he will again be wronged in a similar way.'" *Chapman*, 631 F.3d at 948 (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983)). This is required here because only injunctive relief is available to a private plaintiff under the

---

[2] Page numbers for deposition testimony are the numbers on the transcript.

ADA.[3] *Chapman*, 631 F.3d at 946. An ADA plaintiff can show a likelihood of future injury either by showing that he intends to return to a noncompliant accommodation, and is therefore likely to reencounter the barrier, or by showing that the barrier deters him from returning. *Id.* at 950.

Plaintiff and his wife testified that they intend to return to California for the holidays and on other occasions, and that they intend to meet with friends at Defendant's restaurant, which is conveniently located for this purpose. (Portugal Depo.[4] at 43-44, 45, 47; doc. no. 84-3 ("Pl.'s Decl.") at 52; Undisputed Facts at 8-9.)

Based on the foregoing, Plaintiff presented sufficient evidence to raise a genuine factual dispute regarding standing. Defendant's summary judgment motion in this regard is denied.

**B.   Liability**

Both parties move for summary adjudication on the issue whether Defendant violated the ADA. Plaintiff also requests that, to the extent there is a finding of liability under the ADA, the Court also find state law violations under the Unruh Act and DPA.

The ADA sets out a general rule:

> No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation.

42 U.S.C. § 12182(a). In its summary judgment motion, Defendant focuses on ADA's auxiliary aids requirement, which is incorporated into one of the four alternative definitions of discrimination:

---

[3]   Without the ADA claim, the Court would lack federal jurisdiction over the remaining claims. *See* 28 U.S.C. § 1367.

[4]   Transcript of Eliza Lorraine Leonizo Portugal's deposition ("Portugal Depo.") can be found at docs. no. 75-8 and 84-3 at 46.

> For purposes of subsection (a) of this section, discrimination includes [¶] a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden[.]

*Id.* § 12182(b)(2)(A)(iii). The term "auxiliary aids and services" includes "qualified readers . . . or other effective methods of making visually delivered materials available to individuals with visual impairments[.]" *Id.* §12103(1)(B).

Defendant claims that it provided Plaintiff with a qualified reader because employees were available to assist Plaintiff. Defendant did not offer qualified reader services to Plaintiff, however, because Plaintiff did not ask, was assisted by his sighted companion, and testified he did not need or want assistance from Defendant's employees. (Def.'s Mem. of P.&A. at 17, 19-20; *see also* doc. no. 86 ("Def.'s Reply") at 19-20.)

Defendant's argument is unavailing because the regulations do not excuse Defendant's employees from offering an auxiliary aid or service: "A public accommodation shall not rely on an adult accompanying an individual with a disability to . . . facilitate communication." 28 C.F.R. § 36.303(c)(3). Although this provision has two exceptions -- for emergencies, and when the disabled person "specifically requests that the accompanying adult . . . facilitate communication," there is no evidence to suggest that either of these exceptions applies here. *See id.* It is undisputed that Defendant's employees saw that Plaintiff was blind, handed him a cup to obtain a soda from the Freestyle machine, but did not offer any auxiliary aid or service. (*See* Undisputed Facts at 8; Pl's Depo. at 37.) Defendant does not dispute that a blind person cannot use the Freestyle machine without an auxiliary aid or service.

Defendant maintains that the regulation has no application to this case because it involved a "simple transaction such as purchasing movie tickets at a theater." (Def.'s Mem. of P.&A. at 27 & n.6.) Defendant relies on Appendix A to the regulations. 28

C.F.R. Pt. 36, App. A. The analysis in Appendix A emphasizes that "[t]he public accommodation cannot avoid its obligation to provide an interpreter except under the circumstances described in § 36.303(c)(3)[.]"[5] The analysis goes on to elaborate:

> Section 36.303(c)(3) of the final rule codifies the Department's position that there are certain limited instances when a public accommodation may rely on an accompanying adult to interpret or facilitate communication: (1) In an emergency involving an imminent threat to the safety or welfare of an individual or the public; or (2) if the individual with a disability specifically requests it, the accompanying adult agrees to provide the assistance, and reliance on that adult for this assistance is appropriate under the circumstances. *In such instances, the public accommodation should first offer to provide appropriate auxiliary aids and services free of charge*.

28 C.F.R. Pt. 36, App. A, Subpt. C -- Specific Requirements, Sect. 36.303 Auxiliary Aids and Services (emphasis added). As noted, neither of the exceptions apply in the pending case. However, even if an exception applied, for example, if Plaintiff had expressly requested that his sighted companion assist him instead of Defendant's employee, Defendant was still obligated to offer an appropriate auxiliary aid or service. *A fortiori,* Defendant had an obligation to offer its purported qualified reader when the exceptions did not apply. In light of the foregoing, Defendant's reliance on the remark that § 36.303(c)(3) has "no application in circumstances where an interpreter would not otherwise be required" is unpersuasive. *Id.* Moreover, Defendant does not dispute that a blind person cannot use the Freestyle machine without an auxiliary aid or service.[6] Accordingly, an auxiliary aid or service was required.

---

[5] The quoted portion also refers to § 36.303(c)(4), which addresses minor children as interpreters, and therefore does not apply to the pending case.

[6] Using the Freestyle machine is not a "simple transaction." The parties agree that the Freestyle

> is a self-service beverage dispenser that allows customers . . . to electronically browse, select, and mix beverages from an array of Coca-Cola

9

Defendant also contends that asking for assistance is "a required element of a Title III claim for failure ti provide auxiliary aids or services." (Def.'s Mem. of P.&A. at 25; *see also* Def.'s Reply at 19-20.) Not only is this proposition inconsistent with the regulations and analysis discussed above, the authorities Defendant cites in support of the request requirement, do not support it. The only Ninth Circuit decision cited in the context of Title III of the ADA, *Fortyune v. Am. Multi-Cinema, Inc.,* had no occasion to decide this issue because the disabled plaintiff requested an accommodation. 364 F.3d 1075 (9th Cir. 2004). Moreover, the case did not concern discrimination based on failure to provide auxiliary aids and services under § 12182(b)(2)(A)(iii), which is at issue here. *Id.* at 1082.

Defendant also cites to Appendix C to the regulations. 28 C.F.R. Pt. 36, App. C. In providing examples of the flexibility of the auxiliary aid requirement, the analysis states:

> The auxiliary aid requirement is a flexible one. A public accommodation can choose among various alternatives as long as the result is effective communication. For example, a restaurant would not be required to provide menus in Braille for patrons who are blind, if the waiters in the restaurant are made available to read the menu. Similarly, a clothing boutique would not be required to have Brailled price tags if sales personnel provide price information orally upon request; and a bookstore would not be required to make available a sign language interpreter, because effective communication can be conducted by notepad.

---

> products. [¶ It] allows customers to select from more than twenty different flavors to create a beverage. [¶ P]art of the allure . . . is that it offers customers the ability to create a unique soda flavor from over 100 different possible drink combinations. [¶] The Freestyle uses a touchscreen interface for browsing and selecting a beverage . . . and does not utilize screen reading software. [¶] There is no Braille writing on the Freestyle machine.

(Undisputed Facts at 3.) Even non-disabled customers sometimes require assistance with the Freestyle machine. (*See id.* at 5.) Albeit not as consequential as a financial transaction or medical consultation, using the Freestyle machine is nothing but a simple transaction for a blind customer.

10

28 C.F.R. Pt. 36, App. C, Subpt. C -- Specific Requirements, Sect. 36.303 Auxiliary Aids and Services. Defendant seizes on the example that a clothing boutique sales personnel could provide price information orally upon request to jump to the conclusion that requesting an auxiliary aid or service is required. Nowhere in the ADA, implementing regulations, or anywhere in the analysis of the regulations is there a stated requirement that a disabled person, especially a person whose disability is readily apparent, must request an auxiliary aid or service. The analysis includes two other examples of the flexibility of the requirement, and neither one of them suggests that the disabled individual would have to request an auxiliary aid or service. Accordingly, Defendant's reliance on a sole example is unpersuasive.

Finally, Defendant quotes from the Department of Justice website, http://www.ada.gov/effective-comm.htm, that "Covered entities may require reasonable notice from people requesting aids or services, based on the length of time needed to acquire the aid or service[.]"[7] Defendant does not contend that it would require additional time to "acquire" a qualified reader to assist with the Freestyle machine. To the contrary, its arguments are based on the premise that a qualified reader was available at the restaurant when Plaintiff arrived. The quoted language does not suggest that requesting an auxiliary aid or service is required under such circumstances, nor is it sufficiently authoritative to read a new requirement into the statute. For the foregoing reasons, the Court declines Defendant's invitation to read a request requirement into the ADA, 42 U.S.C. § 12182(b)(2)(A)(iii).

---

[7] This is consistent with 28 C.F.R. § 36.303(c)(1)(ii), which provides:

The type of auxiliary aid necessary to ensure effective communication will vary in accordance with the method of communication used by the individual; the nature, length and complexity of the communication involved; and the context in which the communication is taking place.

Accepting at face value, for purposes of argument only, Defendant's contentions that its employees are "qualified readers" under 42 U.S.C. § §12103(1)(B), and that a qualified reader is sufficient to ensure "effective communication" under 28 C.F.R. § 36.303(c) for visually impaired individuals relative to the use of the Freestyle machine, the Court finds that Defendant discriminated against Plaintiff in violation of 42 U.S.C. § 12182(b)(2)(A)(iii) because it did not offer a qualified reader to assist Plaintiff to use the Freestyle machine. To the extent each party seeks summary adjudication of this issue, Defendant's motion is denied, and Plaintiff's motion is granted. For the same reasons, Plaintiff's motion is granted to the extent that discrimination under the ADA constitutes state law violations pursuant to the Unruh Act and the DPA. *See Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 731 (9th Cir. 2007) (citing Cal. Civ. Code § 51 (Unruh Act) and Cal Civ. Code § 54.1(d) (DPA)).

## III. CONCLUSION

Defendant's motion is denied. Plaintiff's motion is granted insofar as the Court finds that Defendant discriminated against Plaintiff in violation of the ADA, 42 U.S.C. § 12182(b)(2)(A)(iii), and that Defendant violated corresponding state law provisions under the Unruh Act and the DPA. In all other respects, Plaintiff's motion is denied.

**IT IS SO ORDERED.**

Dated: September 28, 2018

_____
Hon. M. James Lorenz
United States District Judge